UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AARON ECKERT,
  *Plaintiff*,

  v.                                                        No. 3:20-cv-1207 (VAB)

WARDEN BUTRICKS, et al.
  *Defendants*.

INITIAL REVIEW ORDER

Aaron Eckert ("Plaintiff"), a sentenced *pro se* inmate[1] in the custody of the Department

of Correction ("DOC"), filed this this civil rights Complaint[2] under 42 U.S.C. § 1983 against

Warden Butricks, Captain Domitriz, Counselor Supervisor Roberts, Lieutenant Saas, and

Administrative Remedies Coordinator Cooper (together, "Defendants"). Compl., ECF No. 1

(Aug. 19, 2020). Mr. Eckert alleges violation of the Fourteenth Amendment to the United States

Constitution. He also alleges a claim under the state common law for breach of contract.[3] Mr.

Eckert seeks damages and injunctive relief. *Id.* at 9.

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website shows that Mr. Eckert was sentenced on March 28, 2019. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=351649.

[2] Mr. Eckert is proceeding *in forma pauperis*. Mot. for Leave to File In Forma Pauperis, ECF. No. 2 (Aug. 19, 2020); Order, ECF No. 7 (Aug. 28, 2020).

[3] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an Initial Review Order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination, for purposes of an Initial Review Order under 28 U.S.C. § 1915A, that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

For the following reasons, the Court will permit Mr. Eckert's Fourteenth Amendment claims to proceed against Defendants.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations[4]

On January 21, 2020, Mr. Eckert allegedly was transferred from the Security Risk Group ("SRG") segregated housing unit at Corrigan-Radgowski Correctional Center to Cheshire Correctional Institution ("Cheshire"). Compl. ¶ 9. Before his removal from the SRG unit, Mr. Eckert allegedly had to sign an agreement acknowledging that he was no longer an active gang-member, while Defendants promised in exchange that he would be placed on "Special Monitoring Status" for six months before he would be removed from that status upon good behavior. [5]  *Id.* ¶ 10.

When Mr. Eckert arrived at Cheshire, he allegedly signed a second agreement with more stipulations and promises relating to his Special Monitoring Status. *Id.* ¶ 11. The second agreement allegedly stipulated that Mr. Eckert had to adhere to certain conditions during the six months before his promised removal from Special Monitoring Status. *Id.* ¶ 12. Mr. Eckert allegedly fulfilled his part of these agreements, but Defendants allegedly have knowingly breached their promises under the agreements. *Id.* ¶ 13.

Special Monitoring Status allegedly effectively denies Mr. Eckert the ability to have his classification level dropped from an overall four. *Id.* ¶ 15. Thus, Mr. Eckert allegedly cannot apply for a half-way house while on Special Monitoring Status. *Id.*

---

[4] All factual allegations are drawn from the Complaint.

[5] Special Monitoring Status is a restrictive status "which provides for increased supervision and monitoring upon an inmate's completion of a special management program or for reasons of safety and security. Administrative Directive 9.4 (3) (U) (Restrictive Status). The DOC Administrative Directives are available on the DOC website at https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Directives-and-Polices-Links.

As of this Complaint's filing date, Mr. Eckert allegedly had been confined at Cheshire for seven months and his status had yet to be reviewed during any of the months as required under the agreement signed on January 21, 2020. *Id.* ¶ 16. Warden Butricks allegedly had not removed Mr. Eckert from Special Monitoring Status, and he allegedly had not sent Mr. Eckert notice or reason why he remained on this status. *Id.*

On June 29, 2020, Mr. Eckert allegedly wrote a notarized request to Lieutenant Saas, who handles monthly reviews of all prisoners on Special Monitoring Status, requesting information about his status. *Id.* ¶¶ 18-19.

Mr. Eckert later allegedly wrote a request to Captain Domitriz about his status because he had not heard from or seen Lieutenant Saas. *Id.* ¶ 20. Captain Domitriz allegedly responded by indicating that reviews were in progress, but he could not provide a specific date. *Id.*

On July 16, 2020, Mr. Eckert allegedly wrote a request to Counselor Supervisor Roberts detailing his concerns and seeking information about his status. *Id.* ¶ 22. Counselor Supervisor Roberts allegedly responded by stating, "This has been verbally addressed but your contact person is Lieutenant Saas or Captain Domitriz." *Id.*

The six-month date for Mr. Eckert to be removed from his Special Monitoring Status allegedly passed, but he allegedly had not received any review or been given a reason why he was still on this status. *Id.* ¶ 23. Mr. Eckert allegedly had been disciplinary report free with no gang activity. *Id.* ¶ 21.

On July 28, 2020, Mr. Eckert allegedly filed an administrative remedies appeal, because he had not received an answer regarding his status removal; Mr. Eckert allegedly

noted that as six months had passed and he was still on Special Monitoring Status, he allegedly could only assume that his removal had been denied. *Id.* ¶ 24.

On July 29, 2020, Coordinator Cooper allegedly knowingly ignored Mr. Eckert's complaint and returned his appeal without disposition. *Id.*

Mr. Eckert allegedly stopped Lieutenant Saas during a routine unit tour and asked him about his status. *Id.* ¶ 25. Lieutenant Saas allegedly responded, "You will never be removed as long as I work here[.] I was at [Bridgeport Correctional Center]. I know what you did." *Id.*

On August 4, 2020, Mr. Eckert allegedly wrote a request to Warden Butricks, inquiring about why he had not been removed, but Warden Butricks allegedly never responded. *Id.* ¶ 27.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

In his Complaint, Mr. Eckert alleges violations of his Fourteenth Amendment due process and equal protection rights.

The Court will address these issues in turn, but preliminarily will address the relevant level of personal involvement in order for a defendant to be subjected to liability.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" as direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). Moreover, a plaintiff cannot sue a defendant for damages solely because of his or her supervisory position. *See Braham v. Newbould*, 160 Conn. App. 294, 308-09 (2015) ("A state official sued in his official capacity for monetary damages is also not subject to suit under § 1983. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (internal quotation marks and alterations omitted)).

A plaintiff may only recover damages against a supervisory official by showing that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the

official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *see also Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).[6]

In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury.).

## A.    The Fourteenth Amendment Procedural Due Proces

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A Fourteenth Amendment due process claim can be either procedural or substantive. A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison setting, liberty interests protected by due process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Courts must examine the actual punishment

---

[6] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Without further Second Circuit guidance on this issue, the Court assumes for purposes of this ruling that the categories outlined in *Colon* remain valid. *See Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000)).

received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576

F.3d 129, 133-34 (2d Cir. 2009) (*per curiam*) (requiring a magistrate judge to compare

conditions of confinement to those of prisoners in general population, as well as those in

administrative and protective confinement); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)

("Factors relevant to determining whether the plaintiff endured an 'atypical and significant

hardship' include 'the extent to which the conditions of the disciplinary segregation differ from

other routine prison conditions' and 'the duration of the disciplinary segregation imposed

compared to discretionary confinement.'" (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d

Cir. 1998)).

　　With respect to time limits for disciplinary confinement, a prisoner who was subjected to

a disciplinary term of thirty days of confinement in restrictive housing did not sustain a

deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process

Clause. *Sandin,* 515 U.S. at 484. This type of confinement did not give rise to a liberty

deprivation as an atypical and significant hardship because "[t]he regime to which [the prisoner]

was subjected . . . was within the range of confinement to be normally expected for one serving

an indeterminate term of 30 years to life." *Id.* at 486-87. Thus, "the duration of [segregated]

confinement is a distinct factor bearing on atypicality and must be carefully

considered." *Colon,* 215 F.3d at 231; *compare Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018

WL 691714, at *12 (D. Conn. Feb. 2, 2018) (holding that a twenty-day confinement in

segregation alone did not constitute a sufficient deprivation of liberty subject to due process

protection because the restriction imposed no "atypical and significant hardship" in relation to

that plaintiff's fifty-one-year sentence of imprisonment), *with Ellerbe v. Jason*, No. 3:12-CV-580

(MPS), 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015) (holding a long period of segregation

such as more than 305 days "is sufficiently atypical to trigger due process protections."

(citing *Palmer,* 364 F.3d at 65)); *see also Palmer,* 364 F.3d at 64-65 (However, "[w]here the

plaintiff was confined for an intermediate duration – between 101 and 305 days – development

of a detailed record of the conditions of the confinement relative to ordinary prison conditions is

required." (quotation marks omitted)). As a result, "restrictive confinements of less than 101

days do not generally raise a liberty interest warranting due process protection, and thus require

proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133; *Kalwasinski v. Morse*, 201

F.3d 103,107-08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU

constitutes an atypical hardship).

Mr. Eckert raises Fourteenth Amendment procedural due process concerns by alleging

that his Special Monitoring Status has not been reviewed. Assuming that he remains on his

restrictive status, Mr. Eckert has been on Special Monitoring status for more than 270 days.

Moreover, his Complaint alleges that he was in the SRG segregation program prior to his

confinement at Cheshire. Thus, the Court construes his Complaint most broadly and considers

that Mr. Eckert has sufficiently raised a liberty interest based on the duration of his restricted

confinement.

Due process requires that prison officials engage in periodic review of the administrative

confinement, but it does not require that an inmate receive a hearing, be present, or provide

statements for these periodic reviews. *Proctor v. LeClaire*, 846 F.3d 597, 609-12 (2d Cir. 2017).

In *Proctor,* the Second Circuit directed that a periodic review must provide a meaningful

evaluation that considers recent conduct in determining whether valid institutional safety reasons

justify continued segregation. *Id.* at 610-11. Prison officials cannot merely "go through the

motions of nominally conducting a review meeting when they have developed a pre-review

9

conclusion that the inmate will be confined in [administrative segregation] no matter what the evidence shows." *Id*. at 610.

Mr. Eckert has sufficiently alleged a procedural due violation on the basis of the alleged failure to review whether he should remain in on a restricted status of Special Monitoring. Accordingly, as he has plausibly alleged the personal involvement of Defendants in this constitutional violation, Mr. Eckert may proceed with this claim against Defendants in their individual capacities.

### B.    The Fourteenth Amendment Equal Protection Claim

To prevail on an Equal Protection claim, a plaintiff must prove that he was treated differently from other similarly situated individuals and the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609-10 (2d Cir. 1980)).

A plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of*

10

*Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016).

Mr. Eckert alleges that he is being treated differently than other prisoners on Special Monitoring Status, who have received reviews. Compl. ¶ 17. But Mr. Eckert has not alleged that he has been discriminated against based upon impermissible considerations such as race, national origin, religion or any other suspect class. Moreover, he has not alleged a plausible class of one equal protection claim. His allegations fail to allege any facts about comparators who are plausibly so similarly situated to him as to raise an inference that no rational basis exists for the differential treatment. Mr. Eckert instead only refers to other Special Monitoring Status inmates who have allegedly received review of their status.

Accordingly, Mr. Eckert's allegations provide no facts to suggest a lack of rational basis for differential treatment. Mr. Eckert's equal protection claims are dismissed as not plausible.

### D.    The Official Capacity Claims

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155-56; *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted).

The exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer*

*Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Moreover, any claims for money damages

against the defendants, who are state employees, in their official capacities are barred by the

Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Mr. Eckert's Complaint seeks injunctive relief to be removed from Special Monitoring

Status. Compl. at 9. The Court construes Mr. Eckert's Complaint broadly to allege claims against

Defendants in their official capacities, and his request for removal from the Special Monitoring

Status as a form of relief for the alleged ongoing Fourteenth Amendment due process violation

based on failure to review his restricted status. Accordingly, the Court will permit this claim to

proceed against Defendants in their official capacities, with the exception of Administrative

Remedies Coordinator Cooper, who is not alleged to have the authority to provide Mr. Eckert

with the requested relief. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have

some connection with enforcement of allegedly unconstitutional act).

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Eckert's Fourteenth Amendment procedural due

process claims against Warden Butricks, Captain Domitriz, Counselor Supervisor Roberts,

Lieutenant Saas, and Administrative Remedies Coordinator Cooper in their individual capacities.

Mr. Eckert's Fourteenth Amendment official capacity claims for injunctive relief may proceed

against Warden Butricks, Captain Domitriz, Counselor Supervisor Roberts, and Lieutenant Saas.

All other federal claims are **DISMISSED**.

(2) If Mr. Eckert believes he can allege facts to cure the deficiencies identified in this

ruling, he may file a motion to amend and attach an amended complaint by **April 23, 2021**.

12

(3) The Clerk of Court shall verify the current work addresses for Warden Butricks, Captain Domitriz, Counselor Supervisor Roberts, Lieutenant Saas, and Administrative Remedies Coordinator Cooper with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **April 16, 2021**, and report on the status of the waiver request by **April 30, 2021**. If any Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk of Court shall prepare a summons form and send an official capacity service packet, including the complaint (ECF No. 1), and this Initial Review Order, on the United States Marshal Service. The U.S. Marshal is directed to effect service of the Complaint and this Initial Review Order on Defendants Warden Butricks, Captain Domitriz, and Counselor Supervisor Roberts, Lieutenant Saas in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **April 16, 2021** and file a return of service by **April 23, 2021**.

 (5) The Clerk of Court shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **May 28, 2021**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **October 1, 2021**. Discovery requests need not be filed with the Court.

13

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed by **December 3, 2021**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Mr. Eckert changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Mr. Eckert must give notice of a new address even if he is incarcerated. He should write "**PLEASE NOTE MY NEW ADDRESS**" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Eckert has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(12) Mr. Eckert shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Eckert is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of April, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE